# EMMA KNUTH v. NORBERT L. MURPHY.[1]

June 27, 1952.

No. 35,762.

---

[1]Reported in 54 N. W. (2d) 771.

*Warren B. King,* for appellant.
*Brenner & Bouchard,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial.

Action is brought by Emma Knuth as special administratrix of the estate of Leo Albert Knuth to recover damages for the latter's wrongful death.

About midnight on September 11, 1949, decedent, a pedestrian, was struck by defendant's automobile near the intersection of Cleveland and University avenues in St. Paul. At this point, Cleveland avenue enters University avenue from the south and forms a T intersection. There is a semaphore on the northwest corner of the intersection 35 feet west of the west boundary line of Cleveland avenue and a few feet west of the crosswalk.

Defendant, accompanied by four passengers, was driving his 1948 Pontiac automobile in a westerly direction along University avenue about halfway between the streetcar tracks and the north curb of University avenue. Although a drizzly rain was falling, the streets were not slippery.

Defendant testified that he was driving at a speed of approximately 20 miles per hour. When he was 300 or 400 feet away, he says that the semaphore was green for him and that it remained green until he had passed through the intersection and passed the semaphore.

Decedent, dressed in dark clothes, was walking in a northerly direction across University avenue. There is some dispute as to

the exact point where he was crossing and where he was struck. The day after the accident, defendant gave a statement to the commissioner of public safety of the city of St. Paul to the effect that he struck decedent about the time he passed the stop light at approximately the west crosswalk. At the trial, defendant testified that he struck decedent one or two car lengths west of the semaphore, and one of his passengers testified that it might have been three car lengths. Decedent's body was found 75 feet west of the semaphore near the curb. His hat was found next to the curb in a catch basin located only six feet west of the semaphore or about 69 feet east from the body. Between the area near the body and the catch basin, magazines were also strewn along the street. Decedent's 142-pound body was badly mangled. The left eye was gouged in, and the eye itself and the upper part of the eye were swollen. His chest was caved in, and his left leg was cut off below the knee. The right leg had a compound fracture and was otherwise injured.

Defendant's car also was extensively damaged. The grill was pushed in one inch and the right front fender was pushed back about one inch. The right-hand door and the right headlight were damaged. The radiator was twisted and the fan bent. The grill moldings were broken; the hood was buckled and damaged and the radiator core damaged, so that both had to be replaced.

Defendant said that he saw decedent only a split second prior to the impact, so that there was no time to apply his brakes. He contends that there was another car immediately to his left which blocked his view and that decedent jumped or was thrown from in front of such other car into defendant's path of travel. One of defendant's passengers, however, testified that although he was looking straight ahead he did not see the car to the left. Furthermore, in the signed statement given to the commissioner of public safety, defendant made no mention of decedent's jumping or being thrown in front of his car, but simply stated that he first saw decedent when the latter was only two or three feet ahead of the vehicle.

The jury gave plaintiff a verdict of $10,000. Upon defendant's appeal from the order denying judgment notwithstanding the verdict or a new trial, we have issues as to (a) the admissibility of evidence of the condition of decedent's body as indicative of speed; (b) negligence; (c) contributory negligence; and (d) whether the trial court erred in instructing the jury on the presumption of due care.

 Upon the first issue, this court has displayed extraordinary impartiality by aligning itself on both sides of the question.[2] In Russell v. Winters, 185 Minn. 472, 241 N. W. 589, we held that upon conflicting evidence, in considering whether an automobile had been driven at an improper speed, the jury had the right to take into account the extent of plaintiff's injuries caused by the impact. Less than three months later, in Campbell v. Sargent, 186 Minn. 293, 243 N. W. 142, this court, without overruling and without making any reference to the Russell decision, held that it was prejudicial error to admit evidence detailing the extent of the injuries to the occupants of one of the colliding cars as a factor for determination of speed. In the light of this conflict in our decisions,[3] it becomes necessary to determine the matter anew. In the Campbell case, we followed the general rule that evidence of the battered condition of an automobile involved in a collision, as well as evidence of the distance the vehicle was moved by the impact and of the throwing of passengers out of the car, is admissible as indicative of the speed of the offending vehicle. However, we held therein that evidence of the personal injuries of a victim was inadmissible, first, because it is not a safe criterion of speed, and, second, because a description of the injuries may be prejudicial. The first ground goes to the weight of such evidence rather than to

[2]See, 5 Berry, Automobiles (7 ed.) § 5.288.

[3]Aside from the South Dakota case of Kriens v. McMillan, 42 S. D. 285, 173 N. W. 731, the major conflict of authority in this country upon the issue is apparently represented by our two Minnesota decisions. See, 5 Berry, Automobiles (7 ed.) § 5.288; 8 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 5483, at p. 466.

its admissibility. As to the second ground, the importance of giv-ing the jury evidence of all the physical facts, *inclusive of injuries to the victim,* outweighs any danger of prejudice in this day when jurors, as members of the public, have become callously familiar with automobile accidents and their tragic result.[4] We therefore expressly overrule the Campbell case and now hold that, insofar as personal injuries sustained by the victim of an automobile collision reasonably tend to disclose the force of the impact, as a basis for an inference of the rate of speed of the vehicle, evidence thereof is admissible in such manner and to such an extent as the trial court shall determine in the exercise of a sound discretion. For this pur-pose, the evidence of the personal injuries should be limited as nearly as possible to a factual statement thereof without unneces-sary elaboration. The admissibility of such evidence is recognized in other jurisdictions.[5] In the instant case, we find no abuse of discretion in the admission of evidence of decedent's injuries.

On the issue of defendant's negligence, the evidence sus-tains the verdict. It is true that all direct evidence, if believed, indicates that defendant was not negligent. It is to be remembered, however, that, although a jury may not disregard the positive testi-mony of unimpeached witnesses,[6] this principle is subject to the

---

[4]In the far more serious cases of trial for murder, we have held that it was not prejudicial error to admit in evidence photographs showing the horrible and revolting condition of the victim's body for the purpose of demonstrating the nature and location of the death wound. State v. DeZeler, 230 Minn. 39, 41 N. W. (2d) 313, 15 A. L. R. (2d) 1137.

[5]Healy v. Moore, 108 Vt. 324, 339, 187 A. 679, 685; Paul v. Drown, 108 Vt. 458, 189 A. 144, 109 A. L. R. 1085; Cunningham v. Spangler, 123 Pa. Super. 151, 186 A. 173; Hunter v. Lincoln Stages, Inc. 161 Wash. 634, 297 P. 179; 5 Berry, Automobiles (7 ed.) § 5.288; 8 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 5483, at p. 466. Also held admissible in manslaughter and similar cases. See, Meuer, Admx. v. Doerflein, 53 Ohio App. 536, 5 N. E. (2d) 948; People v. Jeffers, 372 Ill. 590, 25 N. E. (2d) 35, certiorari denied, 310 U. S. 638, 60 S. Ct. 1081, 84 L. ed. 1407; Brewer v. State, 140 Tex. Cr. 9, 143 S. W. (2d) 599; State v. Leonard, 195 N. C. 242, 141 S. E. 736.

[6]O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430.

exception that such uncontradicted testimony may be disregarded if it is evasive, equivocal, confused, or otherwise uncertain, or if the facts and circumstances disclosed by the record demonstrate, or reasonably lead to the inference, that such direct testimony is contrary to established physical facts or scientific principles or is incredible in the light of the surrounding circumstances.[7] Circumstantial evidence which justifies an inference in support of the verdict upon the issue of negligence is adequate to sustain the verdict, even though it may justify other conflicting inferences, if the supporting inference reasonably outweighs and preponderates over the other conflicting inferences and theories.[8] In the light of these principles, the jury could reasonably find from the circumstantial evidence—contrary to the direct testimony of a speed of only 20 miles per hour—that defendant was traveling at an excessive speed under the driving conditions which then existed. It could reasonably infer such excessive speed from the force of the impact, which was not only sufficiently violent to mangle decedent's body and sever one of his legs, but was also of such force as to push in the grill on defendant's car, bend the fan, buckle the hood, and so damage it and the radiator core that both had to be replaced.

Defendant contends, however, that if it be found that he was traveling at an excessive rate of speed the accident was not proximately caused by such speed, but by decedent's act in suddenly jumping out, or being thrown, in front of defendant's car from the front of a car traveling slightly ahead and to defendant's left. One of the occupants of defendant's car was looking straight ahead but did not see the car to the left, although if it was present it must reasonably have been within the range of his vision. Furthermore, defendant made no mention in a signed statement given to police

---

[7]Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371; In re Estate of Calich, 214 Minn. 292, 8 N. W. (2d) 337; 6 Dunnell, Dig. & Supp. § 10344a; 20 Am. Jur., Evidence, § 1180.

[8]Sherman v. Minnesota Mut. L. Ins. Co. 191 Minn. 607, 612, 255 N. W. 113, 115; Hagsten v. Simberg, 232 Minn. 160, 44 N. W. (2d) 611; Standafer v. First Nat. Bank, 236 Minn. 123, 52 N. W. (2d) 718; 2 Dunnell, Dig. & Supp. § 3234.

officers that decedent either jumped or was thrown in front of his automobile. Under the circumstances, the jury could come to the conclusion that there was no car to defendant's left to block his vision, and that decedent did not jump, or was not thrown, suddenly in front of his car, and that defendant's negligence in driving at an excessive speed on a dark drizzly night was the proximate cause of the accident. Cf. Moeller v. St. Paul City Ry. Co. 218 Minn. 353, 16 N. W. (2d) 289, 156 A. L. R. 371.

Defendant further asserts that decedent was guilty of contributory negligence in that he did not cross University avenue at the regular crosswalk and that he should therefore have yielded the right of way to defendant's vehicle as required by M. S. A. 169.21, subd. 3. Although defendant and another witness testified at the trial that decedent was struck west of the crosswalk, the record shows that defendant in his signed statement said that he hit decedent at approximately the crosswalk. The jury was therefore free to disregard the direct testimony and to infer from defendant's written statement given right after the accident and from the physical facts (*i. e.,* decedent's hat found in the catch basin only six feet from the semaphore and the magazines scattered between decedent's body and the hat) that decedent was in fact traveling on the crosswalk.

It is further contended that decedent was contributorily negligent in that he attempted to cross the street while facing a red traffic signal in violation of § 169.06, subd. 5(c)(2), which provides:

"No pedestrian facing such signal [red light] shall *enter* the roadway." (Italics supplied.)

The burden of proving contributory negligence is on the defendant. Even though the light was green for defendant as he approached the sign, this does not establish without dispute that it read "stop" or was "red" for decedent when he left the curb. The light may have been green for decedent when he left the curb and may have changed to red as he was in the act of crossing. A similar situation arose in the case of Moeller v. St. Paul City Ry. Co. 218

Minn. 353, 16 N. W. (2d) 289. It is true that defendant testified that the signal was green for him not only as he passed the semaphore but also prior thereto for a distance of 300 or 400 feet. If, as the jury could find, defendant was traveling at an excessive rate of speed, it follows that he could easily have covered that distance before decedent reached the point of impact, even though the latter started across the avenue when the signal was in his favor.

■ The trial court erred prejudicially, however, in instructing the jury that there is a presumption that decedent acted with due care, even though this instruction was qualified with the statement that the presumption might be overcome by evidence to the contrary. The presumption of due care by decedent was also argued to the jury. Defendant has the burden of proof to establish plaintiff's contributory negligence. In TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468, we definitely held:

"Where the burden of proving contributory negligence rests on the party against whom a presumption of due care operates, it is reversible error to instruct the jury that there is such a presumption."

The basis for such holding is thoroughly set forth in the TePoel case and will not be discussed here. It is to be noted, however, that even prior to the TePoel decision the rule has been that the very moment countervailing evidence appears from any source the presumption vanishes completely and the case is to be tried as if the presumption never existed. See, Shell Oil Co. v. Kapler, 235 Minn. 292, and cases cited in footnote 5, 50 N. W. (2d) 707, 713, and cases cited in footnote 4. We are not unmindful of the fact that certain decisions expressly overruled in the TePoel case have been misleading. The prejudicial error in the instructions does, however, require a new trial.

The order appealed from is reversed.

Reversed.