OSCAR WILEY AND ANOTHER v. LUVERNE G. HOVEN
AND ANOTHER.
THOMAS WILEY, THIRD-PARTY DEFENDANT.

185 N. W. (2d) 286.

March 26, 1971—No. 42254.

*Mordaunt, Walstad, Cousineau & McGuire* and *Robert J. McGuire,* for appellants.

*Abrams & Spector* and *Mitchell R. Spector,* for respondent plaintiffs.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Frank T. Gallagher, JJ.

PER CURIAM.

This is a contribution claim arising out of an intersection collision. The jury found both drivers negligent but only the negligence of Lorraine J. Hoven to be a proximate cause of the accident. She and defendant Luverne G. Hoven, owner of the car which she was driving, appeal from the judgment which denies them contribution against third-party defendant Thomas Wiley.

At the time of the accident, on May 18, 1967, Thomas Wiley was operating his father's car, with his mother as a passenger, proceeding south on Highway No. 47 in Fridley. Defendant Lorraine J. Hoven approached and entered Highway No. 47 on 49th Street, driving in a westerly direction. At that time, Highway No. 47, the through highway, was in the process of construction. Mrs. Hoven entered and crossed Highway No. 47 in the path of Thomas Wiley, and the collision resulted.

The jury returned a verdict of $12,000 in favor of Mrs. Wiley and Oscar Wiley, who owned the Wiley vehicle. The only issue is whether

the negligence of Thomas Wiley was as a matter of law a proximate cause of the accident. We hold that it was not.

Defendants Hoven argue that the evidence compels a finding that Thomas Wiley exceeded the speed limit and failed to keep a proper lookout, and that such negligence constituted a proximate cause of the collision. In addition, they complain that the instruction on forfeiture of right-of-way for excessive speed left the impression that it applied only when one having the right-of-way was traveling *over* the statutory limit.

There was evidence that the speed limit at this intersection was 35 miles an hour, but whether the limit was posted at the time of the accident was in dispute. A police officer testified that he saw no sign before or after the accident. Estimates of Wiley's speed ranging from 35 miles an hour to 50 miles an hour were made by several witnesses. The court correctly charged the jury with respect to the statutes governing speed, including the necessity for reduced speed at intersections. In addition, the court advised the jury that a driver traveling at an unlawful speed would forfeit any right-of-way he might otherwise have had. After the case was submitted the jury asked for additional instructions with respect to speed and forfeiture of right-of-way. A colloquy between the court and jury concluded with the following:

"JUROR: Your Honor, I believe you read a law stating that they were—an excessive speed, something regarding the right of way.

"THE COURT: Well, that has to do with the right-of-way statute. I read to you what was the duty of a person approaching a highway from an intersecting street controlled by a stop sign. I read that to you. Now, is there something about that that you want? And I added that, of course, that the driver of any vehicle traveling at an unlawful rate of speed forfeits whatever right-of-way the statute might give. That's unlawful rate of speed.

"JUROR: That's the one there."

This discussion suggests that the jury found Wiley was exceeding the lawful speed limit but that his speed was not a direct cause of the collision. We think this was a justifiable conclusion on the basis of the testimony most favorable to defendant Wiley. He was traveling on a through highway, and under our decisions he was not required to reduce his speed at intersections until he saw, or should have seen, that a driver approaching on an intersecting highway was not going to yield the right-of-way. Tauber v. Buffalo Lake Public School Dist. 283 Minn. 383, 168 N. W. (2d) 327; Lapides v. Wagenhals, 285 Minn. 403, 173 N. W. (2d) 334; Seivert v. Bass, 288 Minn. 457, 465, 181 N. W. (2d) 888,

893. Whether or not Mrs. Hoven stopped before entering the through highway (and we assume from the record she did), the jury could find that she emerged from behind a barricade and into the path of Wiley's car under circumstances where a collision was inevitable, whether Wiley was traveling 35 miles an hour or 50 miles an hour. Whichever speed is assumed, the evidence would sustain a finding that Mrs. Hoven's failure to yield the right-of-way was the proximate cause of the accident, and Wiley's speed was not. This was the conclusion reached by the trial court, with which we agree.

Affirmed.